William M. Aron (SBN No. 234408)
**ARON LAW FIRM**
15 West Carrillo Street, Suite 217
Santa Barbara, CA 93101
Tel: (805) 618-1768
bill@aronlawfirm.com

*Attorneys for Plaintiff and the Class*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| LIGIA NEGREANU, individually and on behalf of all those similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>REVOLVE GROUP, INC., ALLIANCE APPAREL GROUP, INC. EMINENT, INC., d/b/a REVOLVE CLOTHING, FWRD, LLC, CINDY MELLO, TIKA CAMAJ, and NIENKE JANSZ,<br><br>        Defendants. | Case No.: 2:25-cv-3186<br><br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, LIGIA NEGREANU ("Plaintiff"), on behalf of herself and all those similarly situated, brings this Class Action Complaint against REVOLVE GROUP, INC., ALLIANCE APPAREL GROUP, INC. EMINENT, INC., d/b/a REVOLVE CLOTHING, FWRD, LLC., CINDY MELLO, TIKA CAMAJ, and NIENKE JANSZ, alleging as follows:

## **INTRODUCTION**

1.     With millions of users all over the United States, in the last seven years, social media became the place to be.  Due to mostly unregulated activity, it quickly grabbed the attention of those perpetrating "get rich quick" scams and other illegal behavior.

2.     REVOLVE was founded in 2012, with the vision of leveraging digital channels and technology to transform the shopping experience.[1]

3.     Revolve claims that through a history of mutually beneficial partnerships, buzzworthy social events, and recognized leadership position to have become a partner of choice for influencers worldwide, leading to a significant competitive advantage.

4.     In fact, for many years, Revolve used its position, payments and free merchandise to entice influencers to endorse and promote its products while failing to disclose any material relationship with the brand.

5.     This action is arising from the deceptive, unfair and misleading promotion of products sold by Revolve in the states of Florida, California, and throughout the United States.

6.     This is a nationwide class action seeking monetary damages, restitution, injunctive and declaratory relief from Defendants REVOLVE GROUP, INC., ALLIANCE APPAREL GROUP, INC. EMINENT, INC., d/b/a REVOLVE CLOTHING, FWRD, LLC (collectively "REVOLVE"), and so-called "Influencers" illegally promoting REVOLVE on social media: CINDY MELLO, TIKA CAMAJ, and NIENKE JANSZ (together "Influencers").

7.     During the Class Period (defined below), the Influencers misrepresented the material connection they have with REVOLVE by endorsing REVOLVE without disclosing the fact that they were compensated for doing it, a practice that is highly unfair and deceptive.

8.     Relying on the undisclosed endorsements and misleading advertising, Plaintiff and the Class Members (defined below) purchased products from REVOLVE and paid a premium, while the REVOLVE products proved to be of a lower value than the price paid. The difference in price can be attributed exclusively to the undisclosed endorsements.

---

[1] https://www.revolve.com/aboutus (last visited Feb. 25, 2025)

CLASS ACTION COMPLAINT

9.      REVOLVE products are sold mostly online, many, if not all REVOLVE's clients during the class period being social media users exposed to undisclosed advertising.

10.     In in order to artificially inflate the prices for the REVOLVE products, both REVOLVE and the Influencers devised a scheme in which the Influencers will endorse REVOLVE products by tagging or recommending such products and the REVOLVE website, pretending they are disinterested consumers.

## JURISDICTION AND VENUE

11.     This is a national class action, including every purchaser of REVOLVE Products in the United States.

12.     Revolve revenue was $1.1 billion in 2023, a good part of which can be directly attributed to the undisclosed endorsements on social media. REVOLVE's gross margin in 2023 was of 52%, with 79% of net sales at full price[2]. Therefore, the estimated damages in this case are of at least US$ 50,000,000.

13.     The National Class is comprised of at least one million people who purchased products from REVOLVE during the Class Period (defined below).

14.     This Court has jurisdiction over this matter under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: 1) there are at least 100 class members; 2) the combined claims of Class Members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and 3) Defendants and Class Members are citizens of different states.

15.     The Court also has jurisdiction pursuant to 28 U.S.C. § 1367 over the Plaintiffs' related state law claims.

16.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because REVOLVE is headquartered in Cerritos, Los Angeles County, California.

## NATURE OF THE ACTION

17.     Plaintiff, Ligia Negreanu, on behalf of herself and all those similarly situated Class

---

[2] See https://investors.revolve.com/overview/ (last visited on Feb 25, 2025).

CLASS ACTION COMPLAINT

1    Members seeks damages, declaratory judgment, permanent injunctive relief, disgorgement of ill-

2    gotten monies, attorney's fees and costs, and other relief from Defendants REVOLVE GROUP, INC.,

3    ALLIANCE APPAREL GROUP, INC. EMINENT, INC., d/b/a REVOLVE CLOTHING, FWRD,

4    LLC., TIKA CAMAJ, NIENKE JANSZ, and CINDY MELLO, for unjust enrichment, fraud,

5    negligent misrepresentation, violations of the FTC Act, 15 U.S.C. § 45(a), and, therefore, violations

6    of the state laws, violation Florida Deceptive Trade Practices Act, violation of California Unfair

7    Competition Law, violation of California False Advertising Law, violations of California's

8    Consumers Legal Remedies Act as well as violations of consumer protection statutes in Colorado,

9    Connecticut, Delaware, District of Columbia, Hawaii, Idaho, Illinois, Iowa, Kansas, Louisianna,

10   Michigan, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New

11   York, Oklahoma, South Carolina, Tennessee, Vermont, Washington, and Wisconsin.

12                                      **THE PARTIES**

13        18.    Plaintiff, Ligia Negreanu ("Negreanu"), is a citizen of Florida who resides in

14   Hillsborough County, FL and is otherwise *sui juris*. Plaintiff brings this action on her behalf and on

15   behalf of all other persons similarly situated class members.

16        19.    Defendant REVOLVE was originally formed as Advance Holdings, LLC in December

17   2012 as a Delaware limited liability company. In October 2018, it changed its name to Revolve Group,

18   LLC. In connection with its initial public offering, or IPO, on June 6, 2019, Revolve Group, LLC

19   converted into a Delaware corporation pursuant to a statutory conversion and changed its name to

20   Revolve Group, Inc. so that the top-tier entity in its corporate structure was a corporation rather than

21   a limited liability company. REVOLVE's principal executive offices are located at 12889 Moore

22   Street, Cerritos, California 90703 [3].

23        20.    REVOLVE owns a number of brands that it is promoting on social media together

24   with its main handle. The brands in REVOLVE portfolio are: Anna Natta, Assignment, Camila

25   Coelho (@camilacoelhocollection), DUNDAS X REVOLVE, Eaves, FWRD (@fwrd) GRLFRND,

26   h:ours, Helsa (@helsastudio), House of Harlow 1960, L'Academie, Lovers + Friends, Lovewave,

27

28   ───────────────────────────
     [3] 2019 Revolve Annual Report, available at
     https://s203.q4cdn.com/458606031/files/doc_financials/2019/ar/REVOLVE-2019-Annual-Report.pdf
                                        - 4 -

LPA, Majorelle, Michael Costello x REVOLVE, More to Come, NBD, Privacy Please (@privacypls), RAYE, REMI x REVOLVE, SIXTHREESEVEN, Song of Style, Superdown (@superdown), Tell Your Friends, Tularosa (@tularosalabel), Weekend Stories (@weekendstories), WellBeing + BeingWell (@wellbeingbrand)

21.    Defendant CINDY BORGES CORREIA DE MELLO a/k/a CINDY MELLO ("Mello"), is a citizen of California who resides in Los Angeles County and is otherwise *sui juris*. Mello is transacting business in California, Florida and nationwide over the internet and actively soliciting business in California, Florida and nationwide. Mello's Instagram handle is @cindymello.



Source: https://www.instagram.com/cindymello/

22.    Defendant TIKA CAMAJ ("Camaj"), is a citizen of California who resides in Los Angeles County and is otherwise *sui juris*. Camaj is transacting business in California, Florida and nationwide over the internet and actively soliciting business in California, Florida and nationwide. Camaj's Instagram handle is @tikacamaj.



CLASS ACTION COMPLAINT

1    Source: https://www.instagram.com/tikacamaj/

2    23.    Defendant NIENKE JANSZ ("Jansz") is a citizen of Florida who resides in Palm

3  Beach County and is otherwise *sui juris*. Jansz is transacting business in California, Florida, and

4  nationwide over the internet and actively soliciting business in California, Florida, and nationwide.

5  Jansz's Instagram handle is @nienkejansz



14    Source: https://www.instagram.com/nienkejansz/

15    **STATEMENT OF FACTS**

16    24.    Social media emerged in the last years as a main source of information and

17  communication[4] for billions of users.

18    25.    There were an estimated 159 million Instagram users in the United States in 2022[5],

19  while in 2021 the platform engaged over 2 billion monthly users[6].

20    26.    In 2025, with over 178.2 million monthly active users, Facebook (part of Meta)

21  continues to dominate the US social media landscape. However, it faces strong competition from

22  another Meta platform, Instagram (143.2 million in the United States) and TikTok (112.4 million

23

24  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

25  [4] Fink, T., 2021. *Drivers of User Engagement in Influencer Branding*. [S.l.]: Springer Fachmedien
   Wiesbaden, p.2.

26  [5] Statista. 2021. *Leading countries based on Instagram audience size as of October 2021*:
   http://www.statista.com/statistics/578364/countries-with-most-instagram-users/ (last visited Oct 28, 2022).

27  [6] Rodriguez, S., 2021. *Instagram surpasses 2 billion monthly users while powering through a year of*

28  *turmoil*, https://www.cnbc.com/2021/12/14/instagram-surpasses-2-billion-monthly-users.html (last visited
   Oct 28, 2022).

CLASS ACTION COMPLAINT

users). Other platforms like Snapchat (92.8 million users), Pinterest (85.4 million), and LinkedIn (80.7 million) are also carving out significant niches.[7]

27.    In the last ten years, social media has become one of the most popular ways to influence consumer behavior online.

28.    For example, since 2017, Instagram has grown tremendously, adding 100 million users every few months[8]. Around seven-in-ten Americans ages 18 to 29 (71%) say they use Instagram.[9]

29.    Researchers found that social media influencer endorsement tends to be more effective than traditional celebrity endorsement by being more cost-effective, generating higher user engagement, and capitalizing on the power and influence of social media influencers over consumers.[10]

30.    Given the enormous reach of the social media platforms, and in an effort to curb online behavior that ignores the law and uses the lack of enforcement as an excuse for violating laws across jurisdiction, the FTC has published several times guidelines for influencers regarding proper advertising practices[11], interpreting the FTC Act.

31.    Indeed, the rapid growth of social media platforms, including Instagram, allowed for lack of regulation and oversight.

32.    Some 80% of social media users said they were concerned about advertisers and businesses accessing the data they share on social media platforms, and 64% said the government

---

[7] https://www.ignitesocialmedia.com/social-networks/the-most-popular-social-media-platforms-of-2025/ (last visited Mar. 12, 2025)

[8] Farhad Manjoo, *Why Instagram Is Becoming Facebook's Next Facebook* The New York Times, April 26, 2017, https://www.nytimes.com/2017/04/26/technology/why-instagram-is-becoming-facebooks-next-facebook.html (last visited Oct 28, 2022).

[9] Schaeffer, K., 2022. *7 Facts About Americans and Instagram.* Pew Research Center. https://pewrsr.ch/3FqryHE (last visited Feb 11, 2022).

[10] Shengnan Ren, Sahar Karimi, Alberto Bravo Velázquez, Jianfeng Cai, 2023. Endorsement effectiveness of different social media influencers: The moderating effect of brand competence and warmth, Journal of Business Research, Volume 156.

[11] Federal Trade Commission. 2019. *Disclosures 101 for Social Media Influencers.* Available at: https://www.ftc.gov/system/files/documents/plain-language/1001a-influencer-guide-508_1.pdf (last visited Oct 28, 2022).

CLASS ACTION COMPLAINT

should do more to regulate advertisers[12].

33.     This is because some unscrupulous "influencers" are acting as advertisers for hire, making it a habit of posting fake reviews for sponsored products or failing to disclose the fact that they were paid to use specific products in the content they create and display on their profile. As such, they are endorsing products without disclosing the material connections with the advertiser. More than often, these "influencers" would advertise everything from alcohol to cannabinoids, from political ideas to illegal giveaways, as long as they are paid the high prices, the luxurious merchandise and expensive trips they are demanding.

34.     Revolve decided to use the lack of regulation to its benefit. Revolve pride itself with using "cost-effectively" the social media platforms as marketing tools:

> "We […] maintain relationships with **thousands of social media influencers** and engage in sponsorship initiatives. As existing eCommerce and social media platforms continue to rapidly evolve and new platforms develop, and as customer behavior and preferences evolve, we must continue to adapt to maintain an effective and authentic presence on these platforms and establish presences on new or emerging popular social media platforms. If we are unable to **cost-effectively use social media platforms** as marketing tools and effectively engage with our customers, our ability to maintain and acquire customers and our financial condition may suffer."

> "Furthermore, as laws and regulations and public opinion rapidly evolve to govern the use of social media platforms, our ability to use certain platforms, including TikTok in particular, as marketing tools may become limited, restricted or more expensive or complicated, which could adversely impact our business and operating results. The **failure by us**, our employees, **our network of social media influencers**, our sponsors or third parties acting at our direction **to abide by applicable laws and regulations** in the use of social media platforms or otherwise, including intellectual property laws and tax reporting and compliance requirements, **could subject us to** regulatory investigations, **class action lawsuits**, liability, taxes, fines or other penalties and have a material adverse effect on our business, financial condition and operating results."

REVOLVE, 2023 Annual Report (emphasis added)

---

[12] Raine, L., 2022. *Americans' complicated feelings about social media in an era of privacy concerns*. http://www.pewresearch.org/fact-tank/2018/03/27/americans-complicated-feelings-about-social-media-in-an-era-of-privacy-concerns/ (last visited Feb. 15, 2022).

CLASS ACTION COMPLAINT

35.     According to this business model, thousands of influencers enrolled in REVOLVE brand ambassador program[13] will wear various products available on REVOLVE website including REVOLVE-owned brands and emphasize this fact to their followers, effectively endorsing such products, while being properly compensated, without disclosing any material relationship with any REVOLVE entity.

36.     It is undisputed that endorsements (especially the undisclosed ones) increase sales for the brand in a "**cost-effective**" manner as it is more likely the consumer buy products that were referred to them, than products that were advertised to them. Revolve recognizes that the influencers generate "consumer appeal and **credibility**" for its owned brands and for the Revolve websites in general[14].

37.     The marketing and sales strategy and the misleading claims above were developed by REVOLVE in California and implemented at the direction of its staff located in California. Also, REVOLVE warrants, and oversees regulatory compliance and product distribution from California.

*38.*     Plaintiffs and Class Members purchase such products at inflated prices, exclusively because of the way the REVOLVE products are advertised on social media and the misleading content of the advertisement.

39.     Ligia Negreanu purchased products online from REVOLVE in 2025 as a result of the brand being endorsed by influencers, including the Defendants in this case.

40.     Other influencers advertising Revolve without disclosing material connections are: Adaleta   Avdic   (@adaatude),   Adrianna   Christina   (@adrianna.christina),   Alicia   Neuman (@fit.and.styled), Sandy Cheeks (@sandeeecheeks), Alexis Castillo (@alexiistherese), Alma Galvan (@g.alma), Amanda Vance (@amandacaseyvance), Anastasia Neronova (@anastasiia.ia), Ann Wynn (@ann.wynn), Ashley Chloe (@ashley_chloe), Ashley Flores (@ashleyfloresfit), Ashley Smouter

---

[13] https://s203.q4cdn.com/458606031/files/doc_financials/2023/ar/revolve-2023-annual-report.pdf

[14] *Id.* ("The broad reach of our social media–driven marketing and events generates consumer appeal and **credibility** for our owned brands, expanding our reach and driving incremental traffic to our sites) (emphasis added).

CLASS ACTION COMPLAINT

1  (@ashleysmouter),  Audrey  Bradford  (@dreybradford),  Barbara  Blank  (@thebarbieblank),  Bree

2  Kleintop  (@breekleintop),  Brianna  Nicole  (@briannanicolexoxo),  Brook  Lily  Brazelton

3  (@brooklilybrazelton),  Camila  Bravo  (@kamilabravo),   Chelcie  May  (@chelciemay),  Chelsea

4  Owens  (@chelsea_owens),  Cherrie  Lynn  (@cherrielynn),  Chiara  Sampaio  (@chiarasampaio),

5  Christine  Burke  (@christineburkee),  Cindy  Limon  (@cindylimon),  Corey  Struve-Talbott

6  (@coreytalbott),  Corinne  Olympios  (@colympios),  Cristal  Garcia  (@cp_g),  Daniella  Beckerman

7  (@daniellabeckerman),  Elizabeth  Elias  (@elizabethelias),  Ellery  Lee  (@elleisalwayshere),  Emilia

8  Taneva  (@bubbly.moments),  Emily  Pemberton  (@empemb),  Emily  Sears  (@emilysears),  Grace

9  White  (@a_southerndrawl),  Gretchen  Geraghty  (@gretchengeraghty),  Janelle  Coco  (@cocojanelle_),

10  Jenn  Jackson  (@jennjakson),  Jennifer  Lauren  (@jenniferxlauren),  Jessica  Bailey  (@jessthrowiton_),

11  Julie  Sarinana  (@sincerelyjules),  Kayla  Dang  (@kaylarg_),  Kristin  Floyd  (@kristinfloyd95),  Laura

12  Reynoso  (@spanglishfashion),  Lisa  Hochstein  (@lisahochstein),  Maddie  Perry  (@meddieperry),

13  Natasha  Kojic  (@natashakeymusic),  Pau  Dictado  (@paudictado),  Rachel  Vogt  (@rachelvogttrends),

14  Raquel  Rojas  (@rachirojas),  Sara  Rothenhausler  (@rothglam),  Taylor  Monaco

15  (@taylorambermonaco),  Urszula  Makowska  (@urszulala),  Vanessa  Villela  (@vannevillela),  Yaritza

16  Medina  (@yaritzamdina),  just  to  name  a  few.

17  **THE INFLUENCERS**

18  41.  Despite being compensated for endorsing the brand by wearing REVOLVE products

19  and endorsing the products on social media, none of the Influencers use the "paid partnership" label

20  suggested by the FTC and Meta (parent company of Instagram). Some of the influencers provide a

21  buried small disclosure so it would be almost impossible for a social media user to discern the fact

22  that the post was sponsored.

23  42.  Therefore, the Influencers fail to be compliant with the FTC Act as interpreted by the

24  FTC found in 16 C.F.R. § 255.5 and the FTC guidelines regarding advertising on social media.[15]

25  43.  In fact, the Influencers are familiar with the FTC guidelines and properly display the

26  required disclosures when the brands are not willing to pay for them to disguise the advertising.

27

28

---

[15] Federal Trade Commission, *supra* note 7.

CLASS ACTION COMPLAINT

1

2

3

4

5



6

7

8

Paid partnership

#ad

9          Source: https://www.instagram.com/cindymello/

10         44.     While Revolve is also familiar with the law and the FTC interpretation of the law, it

11    chooses not to impose disclosure requirements on the influencers, assuming the risk of being fined or

12    being forced to alter their illegal practices:

13              "[A]n increase in the use of social media for product promotion and marketing may increase
                the risk that such content could contain problematic product or marketing claims in violation
14              of applicable regulations. For example, in some cases, the Federal Trade Commission, or the
                FTC, has sought enforcement action where **an endorsement has failed to clearly and**
15              **conspicuously disclose a financial relationship or material connection between an**
                **influencer and an advertiser**. We do not prescribe what our influencers post and if we were
16              held responsible for the content of their posts or their actions, we could be fined or forced to
                alter   our   practices,   which   could   have   an   adverse   impact   on   our   business."[16]
17

18    Revolve 2023 Annual Report, https://investors.revolve.com/financials/annual-reports/default.aspx

19         45.     Plaintiff is "following" all the Influencers on social media. Plaintiff's decision to

20    purchase REVOLVE products and pay a premium for them was determined by the Influencers she

21    followed, specifically by the Defendants in this case and the fact that they endorsed REVOLVE

22    products.

23         46.     Plaintiff would not have purchased the products if she knew that the Influencers were

24    compensated to endorse REVOLVE, that the Influencers did not pay for the clothes they were

25    wearing, that the Influencers benefited from endorsing the brand, and that the Influencers' claims

26    were unfair and misleading.

27    ─────────────────────

28    [16] Revolve 2023 Annual Report, available at
      https://investors.revolve.com/financials/annual-reports/default.aspx

CLASS ACTION COMPLAINT

**THE ADVERTISING**

47.     Meta, the parent company of Instagram, offers various products that advertisers can use for commercial use. For example, an advertiser may promote content using a *boosted post* or an *Instagram ad* for a price paid directly to Meta. Both the *post* and the *ad* are created by the advertiser that wants to promote a certain message, service, or product. They are clearly marked as advertising by Instagram.

48.     The same advertisers can also promote content by directly paying influencers to create a collaboration post. Influencers can also be paid for ads to be posted on the influencer's account, as part of the *grid* (the pictures and videos displayed for a user when accessing or refreshing an account) or as part of *stories* (short videos that only show for a limited amount of time and, usually, can only be viewed once). Such collaboration is usually properly disclosed.

49.     Another way Instagram allows advertisers to use the platform is by sponsoring independent content generated by the influencers themselves. In this case the influencer should take advantage of the "paid partnership" label offered by Instagram to show that influencer is being compensated to generate this content. A "paid partnership" label is also a step in maintaining compliance with the Federal Trade Commission's ("FTC") rules and guidelines and the FTC interpretation of the FTC Act.

50.     Since, at times, Instagram algorithms may spot and remove posts where the "paid partnership" tag is not present, Influencers and REVOLVE are going to great lengths to hide the nature of their partnership.

51.     Every time an influencer advertises and endorses a product, such advertisement may appear in the Instagram *feed* of the Instagram users following the influencer. Also, at times, Instagram will "suggest" the post to users that are not following the influencer but have similar interests.

52.     The Influencers are endorsing REVOLVE products in their posts by tagging @revolve and the other brands owned by REVOLVE.

53.     An "endorsement" is any "advertising message (including verbal statements, demonstrations, or depictions of the name, signature, likeness or other identifying personal characteristics of an individual or the name or seal of an organization) that consumers are likely to

CLASS ACTION COMPLAINT

believe reflects the opinions, beliefs, findings, or experiences of a party other than the sponsoring advertiser. The party whose opinions, beliefs, findings, or experience the message appears to reflect will be called the endorser and may be an individual, group, or institution." 16 C.F.R. § 255.0(b)

54.    The FTC has repeatedly made public guidelines for influencers regarding proper advertising practices, publishing a plain language interpretation of the FTC Act.

55.    As interpreted by the FTC, "[c]ompanies that use deceptive endorsements and reviews inflict an injurious double whammy. They harm consumers with misleading tactics that subvert their choices at check-out. And they take business away from honest competitors that work hard to comply with the law."[17]

56.    In a recent report the National Advertising Division of the Better Business Bureau "recommended that Revolve take steps to ensure that its influencers' posts make clear the influencers' material connection to the brand and noted that Revolve should consult the FTC Endorsement Guides as a resource for clear and conspicuous disclosures[18]".

57.    By endorsing REVOLVE products without regards to the disclosure requirements, the Influencers are in violation of 15 U.S.C. § 45(a) and, as such, their actions are in violation of the "little FTC Acts" enacted in Florida, and California as well as Colorado, Connecticut, Delaware, District of Columbia, Hawaii, Idaho, Illinois, Iowa, Kansas, Louisianna, Michigan, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, Oklahoma, South Carolina, Tennessee, Vermont, Washington, and Wisconsin.

58.    By allowing the influencers to advertise its products without making the proper disclosures, REVOLVE is in violation of of 15 U.S.C. § 45(a) and therefore in violation of the "little FTC Acts" enacted in California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Idaho, Illinois, Iowa, Kansas, Louisianna, Michigan, Minnesota, Montana, Nebraska,

---

[17] Ritchie, J.N.& A. *et al.* (2023) *FTC and endorsements: Final revised guides, a proposed new rule, and an updated staff publication*, *FTC.gov*. Available at: https://www.ftc.gov/business-guidance/blog/2023/06/ftc-endorsements-final-revised-guides-proposed-new-rule-updated-staff-publication (Accessed: 07 September 2023).

[18] Komodo Media, LLC (Advertising by Revolve Group, Inc.), Report #7366, *NAD/CARU Case Reports* (January 2025), https://bbbprograms.org/media/newsroom/decisions/revolve-group (last visited March 28, 2025).

CLASS ACTION COMPLAINT

1   Nevada, New Hampshire, New Jersey, New Mexico, New York, Oklahoma, South Carolina,

2   Tennessee, Vermont, Washington, and Wisconsin.

3                                                       **REVOLVE**

4        59.     In order to enter the US market, REVOLVE devised a marketing strategy dependent on

5   the existence of thousands of social media influencers being able to deliver a "cost-effective" but

6   fundamentally false message to their followers: REVOLVE is their choice for purchasing clothes.

7        60.     Revolve is promoting on social media not only its platform for consumer to purchase

8   clothes, shoes, and beauty products, but it is also promoting its own brands, to the detriment of other

9   brands on the platform.

10       61.     Historically REVOLVE did not have brick-and-mortar stores in the US as it relies

11  exclusively on online sales, most of which are generated by the undisclosed advertising on social

12  media. While REVOLVE opened two small stores with a "curated selection from REVOLVE +

13  FWRD together[19]," the main source of revenue remains, by far, online sales.

14       62.     REVOLVE competition on the retail – platform consists of other similar brand

15  portfolio managers line a.k.a Brands (A.K.A.), owner of Culture King.

16       63.     A.K.A is consistently offering lower prices than REVOLVE.  An analysis of similar

17  products that were offered on both REVOLVE and AKA platforms showed that the prices on AKA

18  were usually 10-40% less than those on REVOLVE.

19       64.     While AKA is also using influencer marketing for its brands, it is a stark difference in

20  the way both companies work. Culture King (a brand in A.K.A.'s portfolio), for example is asking

21  the influencers to properly disclose the material relationship with the brand by using the "Paid

22  Partnership" label and the "#AD" hashtag placed at the beginning of the caption, to comply with the

23  FTC interpretation of the FTC Act.

24  /

25  /

26  /

27

28

---

[19] https://www.revolve.com/content/lp/stores (last visited March 12, 2025)

CLASS ACTION COMPLAINT



Instagram post available at: https://www.instagram.com/nate.t3/reel/DFbd4rORrnn/

65.    On the other hand, REVOLVE and the Influencers are hiding the "ad" hashtag at the end of the post, where the user need to press "more" to see it, are hiding a partnership tag in between many other hashtags, run it together with other hashtags,  or are omitting altogether any reference of the fact that the endorsement is not the Influencer's honest opinion, but rather fully compensated advertising.

66.    The FTC states that the disclosure should be "difficult to miss." Also, the disclosure should identify who the sponsor of the post is[20]. None of the disclosures are present in the Influencer's posts about REVOLVE products.

67.    Out of the considerable profits obtained by REVOLVE from this scheme, part of the money is benefitting the Influencers for their indispensable role.

## THE UNDISCLOSED ADVERTISING

68.    While the practice employed by REVOLVE and the Influencers is very profitable (and "cost-effective"), it is, nevertheless, illegal. Federal law, California law, Florida law, and the law of many other states, all prohibit such commercial behavior.

69.    Plaintiff saw REVOLVE products being worn or used by the endorsing social media influencers she followed which led to her purchasing products on the REVOLVE website, which proved to be of an inferior quality compared with the premiums she paid for the REVOLVE products.

70.    By looking at the posts, prior to making their purchases, Plaintiffs were unable to

---

[20] https://www.ftc.gov/enforcement/notices-penalty-offenses/penalty-offenses-concerning-endorsements (last visited June 25, 2024)

CLASS ACTION COMPLAINT

discern the fact that those posts were paid posts, rather than organic, honest endorsements by the Influencers.

71. But for the Influencers' endorsement and the misleading advertising claims, Plaintiff and the Class Members would not have purchased REVOLE products at the price they paid.

72. In deciding to purchase REVOLVE products, Plaintiff and Class Members followed what they believed to be the honest advice of the Influencers. None of the posts Plaintiff saw mentioned, as required, that the Influencers are nothing more than paid advertisers for the brand.

73. Sometimes Influencers will endorse REVOLVE by simply tagging REVOLVE in their posts, suggesting that this is their choice for purchasing clothing, footwear and cosmetics.

74. Other times the Influencers will specifically indicate that the products purchased on REVOLVE are their favorite clothing, shoes, or their favorite beauty products.

75. This undisclosed advertising has been prevalent on Instagram in the last few years. Many influencers are advertising REVOLVE products on Instagram, without mentioning even once that they are compensated to endorse and advertise REVOLVE and keep it quiet.

## CLASS ALLEGATIONS

76. Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully re-written herein.

77. Plaintiffs assert the counts stated herein as class action claims pursuant to Fed. R. Civ. P. 23.

78. Plaintiffs are filing this lawsuit on behalf of all persons that purchased REVOLVE products online relying on misleading marketing practices and Influencers from March 12, 2021, to present ("Class Period").

79. Plaintiff Ligia Negreanu is a citizen of Florida and seeks to represent three classes composed of and defined as follows:

a. Nationwide Class: All United States residents that purchased products from REVOLVE during the class period.

b. Florida Subclass: All Florida residents that purchased products from REVOLVE during the class period.

CLASS ACTION COMPLAINT

c.    <u>Multi-State Subclass</u>: All residents of the following states that purchased products from REVOLVE during the class period: Colorado, Connecticut, Delaware, District of Columbia, Hawaii, Idaho, Illinois, Iowa, Kansas, Louisianna, Michigan, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, Oklahoma, South Carolina, Tennessee, Vermont, Washington, and Wisconsin.

The consumer protection statutes of these states are materially identical with Florida's and California's statutes. The respective statutes are: COLO. REV. STAT. § 6-1-102; CONN. GEN. STAT. § 42-110a; DEL. CODE ANN. tit. 6, § 2511; D.C. CODE ANN. § 28-3901; HAW. REV. STAT. § 480-1; IDAHO CODE § 48-603; 815 ILL. COMP. STAT. 510/1 (2024); IOWA CODE § 714.16; KAN. STAT. ANN. § 50-623 (2024); LA. STAT. ANN. § 51:1401 (2024); MICH. COMP. LAWS § 445.903; MINN. STAT. § 325F.69; MONT. CODE ANN. § 30-14-101; NEB. REV. STAT. § 59-1601 (2024); NEV. REV. STAT. ANN. § 598.0903 (2024); N.H. REV. STAT. ANN. § 358-A:2 (2024); N.J. REV. STAT. § 56:8-2 (2024); N.M. STAT. ANN. § 57-12-2 (2024); N.Y. GEN. BUS. LAW § 349 (2024); OKLA. STAT. tit. 15, § 751 (2024); S.C. CODE ANN. § 39-5-10; TENN. CODE ANN. § 47-18-104 (2024); VT. STAT. ANN. tit. 9, § 2453 (2024); WASH. REV. CODE § 19.86.010 (2024); WIS. STAT. § 100.18 (2024).

80.    Collectively the members of the Nationwide Class and all Subclasses shall be referred to as "Class Members"

81.    The classes exclude counsel representing the class, governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

82.    Plaintiff reserves the right to amend or modify the class descriptions with greater particularity or further division into subclasses or limitation to particular issues.

83.    This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 ("Rule 23") because it is a well-defined community of interest in the litigation and the class is readily and easily ascertainable.

84.     <u>Numerosity</u>: At least one million consumers have been injured by Defendants' deceptive marketing practices, including Plaintiffs.  At least one million consumers have purchased products from REVOLVE and paid a premium for them in reliance on the Defendants' endorsements.

85.     Each of the classes represented by Negreanu has at least one thousand members and the joinder of all members is impracticable.

86.     <u>Typicality</u>: Plaintiff's story and their claims are typical for the class and, as the named Plaintiff, she is aware of other persons in the same situation. Plaintiffs and the members of each class sustained damages arising out of Defendants' illegal course of business.

87.     <u>Commonality</u>: Since the whole class purchased products from REVOLVE and such products are promoted in the same manner by the Defendants, the questions of law and fact are common to the class.

88.     <u>Adequacy</u>: Negreanu will fairly and adequately protect the interests of each class they represent.

89.     <u>Superiority</u>: As questions of law and fact that are common to class members predominate over any questions affecting only individual members, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

90.     Plaintiff will fairly and adequately represent and protect the interests of the class. Counsel for Plaintiff and the putative class are experienced and competent in litigating class actions.

**<u>VIOLATIONS OF 15 U.S.C. § 45(a)</u>**
(not pled as an independent cause of action)

91.     By failing to disclose their material connection with the brand, the Influencers are in violation of 15 U.S.C. § 45(a).

92.     By failing to mandate and enforce disclosure of material connections with the Influencers, REVOLVE is in violation of 15 U.S.C. § 45(a).

93.     The FTC interprets 15 U.S.C. § 45(a) stating that any material connection should be "clearly and consciously disclosed," and that failure to disclose material connections could subject

CLASS ACTION COMPLAINT

1   both the influencers and the advertisers to civil penalties[21].

2      94.     The violations of the 15 U.S.C. § 45(a) are not pled as an independent cause of action,

3   but as an element of one or more of the causes of action detailed in this Complaint.

4                              **CAUSES OF ACTION**

5      **COUNT I: VIOLATIONS OF FLORIDA DECEPTIVE TRADE PRACTICES ACT**
                              **(FDUTPA)**
6             (On behalf of Plaintiff Negreanu and Florida Subclass)

7      95.     Plaintiff incorporates by reference paragraphs 1-94 of this Complaint as if fully re-
8
    written herein. Negreanu asserts this count on her own behalf and on behalf of the Florida Subclass,
9
    as defined above, pursuant to Fed. R. Civ. P. 23.
10

11     96.     REVOLVE provided Instagram users with the means and instrumentalities for the

12  commission of deceptive acts and practices and engaged in a deceptive act or unfair practice, by

13  engaging in misrepresentation, and statutory violations.

14     97.     For a fee, the Influencers, with the means and instrumentalities for the commission of
15
    deceptive acts and practices, engaged in deceptive acts or unfair practices, by engaging in
16
    misrepresentation and statutory violations.
17

18     98.     As discussed supra, by failing to disclose material connections, Defendants violated

19  15 U.S.C. § 45(a) ("FTC Act") as interpreted by the FTC and the courts, which represents a violation

20  of "FDUTPA".

21     99.     The FTC clarifies its interpretation of the FTC Act is as follows: "if there's a

22  connection between an endorser and the marketer that a significant minority of consumers wouldn't

23  expect and it would affect how they evaluate the endorsement, that connection should be disclosed

24  clearly and conspicuously.[22]"

25

26  _____

27  [21] https://www.ftc.gov/system/files/attachments/penalty-offenses-concerning-endorsements/
    npo_endorsement_template_letter.pdf  (last visited June 25, 2024)
28  [22] See https://www.ftc.gov/business-guidance/resources/ftcs-endorsement-guides-what-people-are-asking

CLASS ACTION COMPLAINT

100.    FDUTPA recognizes that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and […] relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1)." § 501.204 Fla. Stat.

101.    As interpreted by the FTC, failure to disclose material connections represents a violation of FDUTPA.

102.    Such practices as the ones employed by the Defendants are illegal, unethical, unscrupulous, and likely to mislead any consumer acting reasonably in the circumstances, to the class members' detriment.

103.    Defendants' engagement in these unfair practices caused the Plaintiffs to suffer a loss.

104.    The value of the loss should be calculated as the price paid for a product purchased from REVOLVE less the market value of the product (without the infringing endorsements) and it is in excess of $5,000,000.00 for the entire Florida Subclass.

105.    Plaintiff also requests injunctive relief. Absent injunctive relief by this Court, the Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the class members.

106.    Negreanu is aggrieved by the fact that she purchased overpriced merchandise as a direct result of failure to disclose material connections by the Influencers and REVOLVE. The Plaintiff would likely purchase again from Revolve in the future if the endorsements she can see on social media are honest as she would pay the real value of the products.

107.    Pursuant to § 501.211(1), Fla. Stat., as the Plaintiff is aggrieved by the violation of FDUTPA, she is entitled to obtain a declaratory judgment that the Defendants' practice violates the law and to enjoin the defendants as they have violated, are violating, and they are likely to violate the Act in the future.

### COUNT II: VIOLATION OF THE CONSUMERS LEGAL REMEDY ACT. CAL. CIV. CODE. §§ 1750, *ET SEO*.
(On behalf of Plaintiff Negreanu and the Nationwide Class)

- 20 -

108.    Plaintiffs incorporate by reference paragraphs 1-94 of this Complaint as if fully re-written herein. Plaintiffs assert this count on their own behalf and on behalf of the Nationwide Class, as defined above.

109.    The conduct that forms the basis of this action arose in California, the state in which REVOLVE has its U.S. headquarters and principal place of operations in the U.S.

110.    Defendants developed, designed, and implemented policies and procedures at issue in this case in California.

111.    Defendants are each a "person" within the statutory meaning of Cal. Civ. Code § 176l(c).

112.    Defendants provided "goods" within the meaning of Cal. Civ. Code §§ 1761(a), 1770.

113.    Plaintiffs and Class Members of the Nationwide Class are "consumers" within the meaning of Cal. Civ. Code §§ l76l(d), 1770 and have engaged in a "transaction" within the meaning of Cal. Civ. Code §§ 1761(e), 1770.

114.    As set forth herein, Defendants' acts and practices, undertaken in transactions violate §1770 of the Consumers Legal Remedies Act in that:

a.    Defendants misrepresented the source, sponsorship, approval, or certification of the goods or services.

b.    Defendants misrepresented the affiliation, connection, or association with, or certification by another.

c.    Defendants represented that the goods or services have approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; and

d.    Defendants advertised goods or services with intent not to sell them as advertised.

115.    Pursuant to the provision of Cal. Civ. Code §1780, Plaintiffs seek an order enjoining Defendants from the unlawful practices described herein, a declaration that Defendants' conduct

1   violates the Consumers Legal Remedies Act, and attorneys' fees and costs of litigation.

2   **COUNT III: VIOLATIONS OF CALIFORNIA'S UNLAWFUL BUSINESS PRACTICES ACT, CAL. BUS. & PROF. CODE § 17200. *ET. SEQ***

3   (On behalf of Plaintiff Negreanu and the Nationwide Class)

4      116.    Plaintiffs incorporate by reference paragraphs 1-94 of this Complaint as if fully re-

5   written herein. Plaintiffs assert this count on their own behalf and on behalf of the Nationwide Class,

6   as defined above, and pursuant to Rule 23.

7      117.    The conduct that forms the basis of this action arose in California, the state in which

8   REVOLVE has its U.S. headquarters and principal place of operations in the U.S. Defendants

9   developed, designed, and implemented policies and procedures at issue in this case in California.

10                **Unfair And Fraudulent Competition**

11      118.    Defendants have engaged in unfair competition within the meaning of Cal. Bus. &

12   Prof. Code §§17200, et seq., because Defendants' conduct is unlawful, unfair, and/or fraudulent, as

13   herein alleged.

14      119.    Plaintiffs, the class members, and Defendants are each a "person" or "persons" within

15   the meaning of § 17201 of the California Unfair Competition Law ("UCL").

16      120.    Defendants promoted and advertised REVOLVE products without properly

17   disclosing their financial interest and such acts and practices constitute deceptive acts or practices

18   in violation of Section 5(a) of 15 U.S.C. § 45(a).

19      121.    A violation of Section 5(a) of 15 U.S.C. § 45(a) represents a per se violation of the

20   California Unfair Competition Law ("UCL").

21                **Unlawful Competition**

22      122.    The UCL is, by its express terms, a cumulative remedy, such that remedies under its

23   provisions can be awarded in addition to those provided under separate statutory schemes and/or

24   common law remedies.  Plaintiffs hereby incorporate by reference all prior causes of action into this

25   cause of action.

26                **Violations of Advertising Law**

27      123.    By making statements that are not true and statements that are misleading, Defendants

28   are in violation of California False Advertising Law, Cal. Civ. Code. §§ 17500, *ET SEQ*.

CLASS ACTION COMPLAINT

124.   "'[A]ny violation of the false advertising law . . . necessarily violates the UCL.'" (*Kasky, supra*, 27 Cal.4th at p. 950.)  Section 17500 "proscribe[s] '"not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."' [Citation.]"  (*Colgan v. Leatherman Tool Group, Inc*. (2006) 135 Cal.App.4th 663, 679.)

125.   Plaintiff and the Nationwide Class Members request that this Court enter such  orders or judgments as may be necessary to enjoin Defendants from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and Class Members any monies Defendants acquired by unfair competition, including restitution and/or equitable relief, including disgorgement or ill-gotten gains, refunds of monies, interest, reasonable attorneys' fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

126.   Plaintiffs and Class Members seek attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

### COUNT IV: VIOLATIONS OF CONSUMER PROTECTION LAWS OF VARIOUS STATES
(On behalf of Plaintiff Negreanu and the Multi-State Class)

127.   Plaintiff incorporates by reference paragraphs 1-94 of this Complaint as if fully re-written herein. Plaintiff asserts this count on her own behalf and on behalf of the Pennsylvania Subclass, as defined above.

128.   As discussed supra, by failing to disclose material connections, Defendants violated 15 U.S.C. § 45(a) ("FTC Act") as interpreted by the FTC and the courts, which represents a violation of the little FTC Acts of the states included in the Multi-State Class.

129.   The consumer protection statutes enacted in the states included in the Multi-State Class are materially identical to FDUTPA and UCL.

130.   As such, the members of the Multi-State Class are entitled to damages as calculated by each consumer protection statute in the state where they reside.

### COUNT V: UNJUST ENRICHMENT
(On behalf of Plaintiff Negreanu and the Florida Subclass)

131.    Plaintiffs incorporate by reference paragraphs 1-94 of this Complaint as if fully rewritten herein. As set forth above, Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated Instagram users.

132.    By paying the high prices demanded by REVOLVE, Plaintiffs and Class Members conferred a direct benefit to all the Defendants.

133.    Instagram users that are members of the class continue to suffer injuries as a result of the Defendants' behavior. If the Defendants do not compensate the Plaintiff, they will be unjustly enriched as a result of their unlawful act or practices.

134.    Under Florida law it is an equitable principle that no one should be allowed to profit from his own wrong, therefore it would be inequitable for the Defendants to retain said benefit, reap unjust enrichment.

135.    Due to Defendants' conduct, Plaintiff and the Florida Subclass Members are entitled to damages according to proof.

### COUNT VI: NEGLIGENT MISREPRESENTATION
(On behalf of Plaintiff Negreanu and the Nationwide Class)

136.    Plaintiffs incorporate by reference all paragraphs 1-94 of this Complaint as if fully rewritten herein. As set forth above, the Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated persons pursuant to Rule 23.

137.    Defendants had a duty to be truthful in their commercial speech. In convincing the Plaintiff to purchase products sold by REVOLVE, Defendants made representations that they knew to be false or negligently failed to examine the veracity of the affirmations.

138.    As a result of the Defendants' negligent misrepresentations, Plaintiff and the Nationwide Class Members suffered injury.

### DEMAND FOR JURY TRIAL

139.    Plaintiff and those similarly situated Class Members demand a trial by jury for all issues so triable.

CLASS ACTION COMPLAINT

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Ligia Negreanu, respectfully request that judgment be entered in her favor and in favor of the Class Members as follows:

a.      Certifying and maintaining this action as a class action, with the named Plaintiff as designated class representative and with her counsel appointed as class counsel;

b.      Declaring the Defendants in violation of each of the counts set forth above;

c.      Awarding the Plaintiff and those similarly situated compensatory, punitive, and treble damages in excess of $50,000,000;

d.      Awarding the Plaintiff and those similarly situated liquidated damages;

e.      Order the disgorgement of ill-gotten monies;

f.      Awarding the named Plaintiff a service award;

g.      Awarding pre-judgment, post-judgment, and statutory interest;

h.      Awarding attorneys' fees and costs;

i.      Awarding such other and further relief as the Court may deem just and proper.

Dated: March 20, 2025

Respectfully submitted,

/s/ William M. Aron
William M. Aron (SBN No. 234408)
**ARON LAW FIRM**
15 West Carrillo Street, Suite 217
Santa Barbara, CA 93101
Tel: (805) 618-1768
bill@aronlawfirm.com

Keith L. Gibson (*Pro Hac Vice* forthcoming)
KEITH GIBSON LAW, P.C.
586 Duane Street, Suite 102
Glen Ellyn, IL 60137
Telephone: (630) 677-6745
Email: keith@keithgibsonlaw.com

Bogdan Enica (*Pro Hac Vice forthcoming*)
1200 N Federal Hwy, Ste.300
Boca Raton FL 33432
Telephone: (305) 306-4989
Email: bogdan@keithgibsonlaw.com

*Counsel for Plaintiff and the Putative Class*

- 25 -

CLASS ACTION COMPLAINT